[No. A021998. First Dist., Div. Five. July 24, 1984.]

REDWOODS COMMUNITY COLLEGE DISTRICT, Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
DORIS HUGHEY et al., Real Parties in Interest.

## COUNSEL

M. Mari Merchat and Kronick, Moskovitz, Tiedemann & Girard for Petitioner.

Dennis M. Sullivan, Jeffrey Sloan and Martin Fassler for Respondent.

Luis E. Saenz, Siona D. Windsor and Seanz & Windsor for Real Parties in Interest.

## OPINION

**HANING, J.–** Under federal and California labor cases an individual employee has a right to be represented by his or her union at certain kinds of interviews with management. No court appears to have set a firm outer

limit to this right of representation, although the facts that the employee requested the representation, that the interview was investigatory, and that the employee reasonably believed that the interview might result in disciplinary action against him or her (the discipline element), have been deemed significant. (Cf., e.g., *NLRB* v. *Weingarten, Inc.* (1975) 420 U.S. 251, 256, 260-267 [43 L.Ed.2d 171, 177, 179-183, 95 S.Ct. 959]; *Robinson* v. *State Personnel Bd.* (1979) 97 Cal.App.3d 994, 1000-1003 [159 Cal.Rptr. 222].)

In this matter the Public Employment Relations Board (PERB) has taken the position that the discipline element is not a prerequisite to such a right of representation under the Educational Employment Relations Act (EERA; Gov. Code, § 3540 et seq.). PERB has concluded that a clerical employee of a community college district was entitled to participatory union representation at an investigative interview notwithstanding an administrative law judge's express finding that the employee "could not reasonably expect discipline to result from the interview." (Pub. Employment Relations Bd. Dec. No. 293, *California School Employees Association* v. *Redwoods Community College District.*) PERB determined that by refusing to permit the employee's union representative to speak in the course of the interview, the district violated the rights of both the employee and the union under EERA.

PERB's position concerns us: We recognize the need for workable guidelines for both labor and management to avert burdensome demands for union representation at the most mundane of employer-employee interviews. We agree with the declaration of the National Labor Relations Board, quoted with approval in court decisions, that it would not apply a rule of representation at individual employee-management interviews "to such run-of-the-mill shop-floor conversations as, for example, the giving of instructions or training or needed corrections of work techniques. In such cases there cannot be any reasonable basis for an employee to fear that any adverse impact may result from the interview, and thus we would then see no reasonable basis for him to seek the assistance of his representative." (*Quality Manufacturing Co.* (1972) 195 NLRB 197, 199, quoted in *NLRB* v. *Weingarten, Inc., supra,* 420 U.S. at pp. 257-258 [43 L.Ed.2d at pp. 177-178], *Robinson* v. *State Personnel Bd., supra,* 97 Cal.App.3d at p. 1001, and *Alfred M. Lewis, Inc.* v. *N.L.R.B.* (9th Cir. 1978) 587 F.2d 403, 410.) But we conclude that in the unusual circumstances of this action PERB's ultimate determination was correct: The clerical employee was entitled to union representation which she did not receive. Accordingly, we affirm.

In August 1980 Doris Hughey, a clerical employee of Redwoods Community College District (District), received from her supervisor, Wyckoff,

a routine performance evaluation which she considered less favorable than it should have been. Her dissatisfaction was made known to a District vice president, Saunders. Saunders reviewed the evaluation with Wyckoff and then with Hughey, and suggested that Hughey attempt to work the matter out with Wyckoff. Hughey asked Saunders to withdraw the evaluation from her file but Saunders declined to do so.

Saunders then received from Hughey a written request "to have my recent evaluation reviewed by an impartial person or party in the presence of a [California School Employees Association (CSEA)] representative of my choice." CSEA was the exclusive representative of Hughey and other District employees within the meaning of EERA. Saunders asked the college dean of administrative services, Hannah, to conduct the review.

Before Hannah accepted the assignment, Hughey met with Wyckoff, another administrative official of the District, and two CSEA representatives (Rumley and Emery): It was agreed that Wyckoff would do a new evaluation of Hughey after 60 days.

After Hannah accepted Saunders' assignment, Hughey wrote to Hannah to withdraw her request: In light of her agreement with Wyckoff she no longer wanted a review. In response Saunders took the position that Hughey's complaint was "a challenge to the 'independent review'" Saunders had made and to the evaluation process itself, and, therefore, should be investigated further. Hannah scheduled separate meetings with Hughey and with Wyckoff. Hughey asked that CSEA representative Rumley be present to represent her at her meeting with Hannah. Hannah questioned whether Hughey had a right to representation at the meeting but agreed that CSEA representatives could be present.

Hannah's meeting with Hughey occurred on October 30. Rumley was present, as were the incumbent CSEA local president (Dickhoner) and a District personnel technician. At the outset Hannah stated that the meeting was being conducted for the purpose of fact finding, to allow Hughey to state her concerns, and that "the meeting had no aspect or overtones for discipline." Hannah stated that Hughey had requested the presence of the CSEA representatives, "that as it was not a disciplinary action but just an informational gathering process that it wasn't necessary, but he respected her wishes that they be present and that was why they were there." According to Hughey, Hannah also told Rumley "to refrain from entering into the conversation. The conversation will be between Doris and I [sic] regarding the evaluation."

The interview then proceeded: Hannah took Hughey down the evaluation form item by item, asking for her comments. Rumley interrupted once: He may have been allowed to say no more than "You know how Howard [Wyckoff] is . . . ." Hannah cut him off at mid-sentence, stating that the meeting was not a hearing but rather an information-gathering session and that Rumley should not make comments. There is evidence that Hannah added that if Rumley had complaints about Wyckoff he should take them up with Wyckoff.

Neither Hughey nor Rumley, nor anyone else, objected to Hannah's statements. Rumley said nothing further and the meeting was completed without further relevant incident.

Early in December, CSEA filed an unfair practice charge against District with PERB, basing the charge on Hannah's refusal to allow Rumley to speak.

On December 23, having met with Wyckoff, Hannah submitted a memo to Saunders. Hannah found "substance for concern both on the part of . . . Wyckoff and . . . Hughey . . . ." He concluded that Hughey had not been performing as well as could have been expected but that this should be attributed at least in part to "lack of direction on certain issues" by Wyckoff. He recommended that Hughey and Wyckoff be encouraged to communicate more effectively and that an additional performance evaluation be conducted. The memo was placed in Hughey's personnel file.

PERB ultimately sustained CSEA's unfair labor practice charge, concluding that "under the instant circumstances, Hughey had a right to be represented and that CSEA enjoyed a concomitant right to represent her at the interview," and that Hannah's statements and rulings at the interview amounted to "a clear denial of meaningful representation." This petition, under Government Code section 3542, followed. District contends only that neither Hughey nor CSEA had a right of representation at the interview; it apparently concedes that if there were a right of representation then Rumley should have been allowed to participate.

■ EERA, enacted in 1975, reflects elements of the federal National Labor Relations Act and Labor Management Relations Act, and even more closely tracks such California public-employee enactments as the 1968 Meyers-Milias-Brown Act. (Gov. Code, § 3500 et seq.) It provides for collective representation and bargaining which fall somewhere between a meet-and-confer system and full-fledged collective bargaining. The emphasis is on collective activity by school employees, permitting such employees as a

group to negotiate concerning terms of employment and (for certificated employees) matters of professional policy. (*San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 855-857, 859 et seq. [191 Cal.Rptr. 800, 663 P.2d 523]; *Sonoma County Bd. of Education* v. *Public Employment Relations Bd.* (1980) 102 Cal.App.3d 689, 697-699 [163 Cal.Rptr. 464]; Rodda, *Public Employment Relations Symposium: Collective Bargaining in the California Public Schools* (1978) 18 Santa Clara L.Rev. 845.) Denial of rights guaranteed by EERA to either an employee or an employee organization is unlawful. (Gov. Code, § 3543.5, subds. (a), (b).)

In concluding that District had violated EERA, PERB relied on Government Code sections 3540, 3543, and 3543.1. Section 3540 contains a broad statement of the purpose of EERA.[1] Section 3543 provides, in relevant part, that "Public school employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations." Section 3543.1, subdivision (a), gives a corresponding right to employee organizations: "Employee organizations shall have the right to represent their members in their employment relations with public school employers . . . ."

PERB took the position that this broad language gave Hughey and CSEA rights of representation at the interview. In PERB's view, "Evaluations are of crucial importance to employees whose promotions, pay raises, transfers, and professional reputations may be affected." PERB acknowledged that representation would not be required for "routine conversations" between an employee and management, but held that the importance of Hughey's interview with Hannah, a perceived similarity between this interview and a grievance procedure or appeal, and the formal nature of the meeting all supported its conclusion that Rumley should have been allowed to participate. PERB did not consider the discipline element essential. To buttress its position, PERB relies on an axiom of administrative law: "Under established principles PERB's construction is to be regarded with deference by a court performing the judicial function of statutory construction, and will generally be followed unless it is clearly erroneous. [Citations.]" (*San Ma-*

---

[1]Government Code section 3540 provides, in pertinent part: "It is the purpose of this chapter to promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by such organizations in their professional and employment relationships with public school employers, to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of educational policy."

*teo City School Dist.* v. *Public Employment Relations Bd., supra,* 33 Cal.3d at p. 856.)

On its face the EERA language on which PERB relies is considerably broader than that of the National Labor Relations Act (NLRA), section 7, on which *NLRB* v. *Weingarten, Inc., supra,* 420 U.S. 251, turned. In *Weingarten* an employee suspected of thefts from the employer was closely interrogated by representatives of the employer. She repeatedly asked that a shop steward from her union be called to the interview, but her requests were denied. An unfair labor practice proceeding ensued. The United States Supreme Court endorsed the National Labor Relations Board's (NLRB) conclusion that the employee had "a statutory right . . . to refuse to submit without union representation to an interview which he reasonably fears may result in his discipline . . . ." (*Id.,* at p. 256 [43 L.Ed.2d at p. 177].) The NLRB, and the United States Supreme Court, relied on NLRA section 7, which has no direct counterpart in EERA. Section 7 provides, in pertinent part, that "Employees shall have the right . . . to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." The United States Supreme Court deemed the NLRB's rule "a permissible construction of 'concerted activities for . . . mutual aid or protection' . . . ." (*Weingarten,* at p. 260 [43 L.Ed.2d at p. 179].) *Weingarten* stressed the discipline element.

*Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382 [113 Cal.Rptr. 461, 521 P.2d 453], was decided 10 months before *Weingarten;* it arose under the Meyers-Milias-Brown Act. The Supreme Court "concluded that a public employee's statutory right to effective union representation . . . includes a right to have a union representative accompany him to a meeting with his employer when the employee reasonably anticipates that such meeting may involve union activities and when the employee reasonably fears that adverse action may result from such a meeting because of union-related conduct." (*Id.,* at p. 384.) Thus, California's right of representation at individual employee-management interviews may be traced to origins independent of *Weingarten* and NLRA section 7.

In *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552 [150 Cal.Rptr. 129, 586 P.2d 162], the Meyers-Milias-Brown Act was again involved. The question was whether employees were entitled to union representation in the course of informal proceedings leading to short-term disciplinary suspension. *Weingarten* had been decided; our Supreme Court noted that *Weingarten* had relied on the "other mutual aid or protection" language of NLRA section 7 but nevertheless concluded that

624

the *Weingarten* analysis was relevant. *Civil Service Assn.* ultimately turned on an analogy to disciplinary hearings: "We have long recognized the right of a public employee to have his counsel represent him at disciplinary hearings. (*Steen* v. *Board of Civil Service Commrs.* (1945) 26 Cal.2d 716, 725 . . . .) While *Steen* may have dealt with representation by a licensed attorney, the right of representation by a labor organization in the informal process here involved seems to follow from the right to representation contained in the Meyers-Milias-Brown Act and the right to representation recognized in *Steen.* Thus, the labor organization may here participate if requested by the employee." (*Civil Service Assn.* v. *City and County of San Francisco, supra,* at pp. 567-568.)

In *Robinson* v. *State Personnel Bd., supra,* 97 Cal.App.3d 994, Robinson's employer had criticized his work; proceedings of a palpably disciplinary nature were begun. Robinson refused to attend a meeting to discuss his problems unless a union representative were present; he was then fired. The case came up under the State Employee Organizations Act (since superseded by the State Employer-employee Relations Act). The Court of Appeal found the *Civil Service Assn.* analysis relevant. "And the rulings of [*Weingarten*] and its progeny are persuasive in interpreting [the relevant sections of the State Employee Organizations Act]." (*Robinson* v. *State Personnel Bd., supra,* at p. 1000.) "Respondent is correct that California law does not as such contain section 7 of the National Labor Relations Act. Nonetheless, the California law has imbibed the federal policy, *as it applies to the scope of representation,* through adoption of the federal language. 'The phrase "wages, hours, and other terms and conditions of employment" is taken verbatim from the LMRA, where it has been given a generous interpretation, including almost anything that might affect an employee in his employment relationship.' [Citations.] The inclusion of investigatory meetings within the scope of representation is in keeping with the generous interpretation accorded to the federal language." (*Id.,* at p. 1001.) "Robinson had a right to refuse the meeting without a union representative if a significant purpose of the meeting was to investigate facts in relation to the contemplated disciplinary action." (*Id.,* at p. 1003.)

None of these cases holds that there would not be a right of representation if the discipline element were absent. But the opinions in *Weingarten, Civil Service Assn.* and *Robinson* show that there was a potential for disciplinary action in each case, and that each court considered the discipline element significant. And the California cases indicate that the differences between NLRA section 7 and the broader language of various California statutes have not been deemed dispositive.

The limitation implicit in the discipline element is sound as a matter of policy. The employer's interest in efficient operation for maximum return is in measurable degree shared by the employee. The process of arranging for and permitting participatory union representation will have some necessary tendency to interrupt the operation. It is therefore a matter of mutual interest that participatory representation at employer-employee interviews be limited to those situations in which it is warranted by the circumstances, and that the parties be enabled promptly and accurately to identify such situations. In any work situation employers and employees will be required repeatedly to communicate on a variety of subjects, often including the employer's expectations and the employee's performance. We cannot agree with the suggestion, implicit in PERB's argument, that under EERA an employee will be entitled to union representation at every routine performance-evaluation interview: Regardless of their importance, such interviews are an accepted part of personnel management in any well-run operation, and bear no significant threatening or derogatory connotation. Nor is it wholly satisfactory to make the right of representation in an employee-management conversation turn on whether the conversation might in some abstract sense be deemed "investigatory," or on the degree of formality attending the interview, or on a perceived similarity to a grievance or appeal procedure, without more. Even in combination these elements might, in a given case, suggest no more than routine business communication. On the other hand, in most if not all cases the discipline element will have a direct and rational tendency to narrow the inquiry to manageable dimensions. Although the precedents do not compel a conclusion that the discipline element is invariably essential to a right of representation, under EERA and other California labor statutes representation should be granted, absent the discipline element, only in highly unusual circumstances.

This is such a case. Hughey was required to participate in an interview which she no longer sought, before a high-level District administrator, and to respond to questions concerning her work performance. For all of Hannah's assurances to the contrary, his inquiry amounted to an assessment of what Hughey had considered a negative personnel review. Unquestionably the interview was investigatory and relatively formal. The atmosphere was intimidating, and Hannah's attitude toward Rumley could only have made it more so. Hughey's concerns were implicit in her request for union representation at the interview. Parenthetically, her concerns were in significant measure borne out when, as a consequence of the interview, a memorandum containing negative reflections on Hughey's performance was placed in her personnel file. In these unusual circumstances Hughey was entitled to representation which she did not receive, and CSEA was denied its right to represent her.

Insofar as Public Employment Relations Board Decision No. 293, *California School Employees Association* v. *Redwoods Community College District,* states or necessarily implies that under the Educational Employment Relations Act the right of union representation at individual employee-management interviews will never depend upon a showing that the employee reasonably believes that the interview may result in disciplinary action against him or her it is disapproved. In all other respects, Decision No. 293 is affirmed.

Low, P. J., and King, J., concurred.