**SAN JOAQUIN DEPUTY SHERIFFS' ASSOCIATION; Kim Poeun, Plaintiffs,**

v.

**COUNTY OF SAN JOAQUIN; San Joaquin County Sheriff's Office; Steve Moore, Sheriff, in his official and individual capacities; and Does 1 through 100, inclusive, Defendants.**

**No. CIV. S–12–1361 LKK/GGH.**

United States District Court, E.D. California.

Sept. 24, 2012.

---

Christopher Wayne Miller, Mastagni, Holstedt & Amick, Sacramento, CA, for Plaintiffs.

Mark Emmett Berry, Mayall Hurley Knutsen Smith and Green, Stockton, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

This case arises from a confrontation between Plaintiff Deputy Sheriff Kim Poeun and Defendant Sheriff Steve Moore that occurred on September 30, 2011, in the parking lot of the San Joaquin County Sheriff's Office. Plaintiffs bring this case pursuant to 42 U.S.C. § 1983, the Constitution for the State of California, Califor-

nia Government Code §§ 3303 and 3500, and tort law theories.[1]

Pending before the court is Defendants' motion to dismiss, ECF No. 9, which Plaintiffs oppose, ECF No. 15. For the reasons provided herein, the court GRANTS, in part, and DENIES, in part, Defendants' motion.[2]

# I. BACKGROUND

## A. Factual Background [3]

Beginning in 2006, Plaintiff Deputy Sheriff Kim Poeun ("Poeun") was assigned to a position in the Patrol Division. At the time of the incident alleged herein, Poeun was assigned to transportation.

On or about September 30, 2011, at around 6:00 A.M., Poeun arrived in his personal vehicle for work at the San Joaquin County Sheriff's Office. As Poeun arrived, Defendant Sheriff Steve Moore ("Moore") stopped his own vehicle behind Poeun. Moore ordered Poeun to approach him, and Poeun complied.

Moore then ordered Poeun to produce his driver's license and told him that he would be cited for speeding. Poeun responded that he did not have his driver's license. Moore ordered Poeun to surrender his car keys and to report to Moore's office at 9:00 A.M. the same day.

Poeun reported to Moore's office as ordered. At that time, Moore told Poeun that he had observed Poeun speeding as well as running a stop sign. Moore "interrogated Poeun about those alleged incidents but did not advise Poeun he was under investigation," or "advise him of his rights."

Before questioning Poeun about his alleged violations of the California Vehicle Code, Moore also "did not advise Poeun of his rights pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution and the decision in *Miranda v. Arizona*, 384 U.S. 436[, 86 S.Ct. 1602, 16 L.Ed.2d 694] (1966)."

Moore ordered Poeun to issue himself a traffic citation admitting to violations of the California Vehicle Code. Poeun complied by issuing himself a citation for violations of California Vehicle Code sections 22450(a), failure to stop at a stop sign; 22350, basic speed law; and 12951(a), driver's license not in possession, with a date to appear in San Joaquin County Superior Court.

Moore returned Poeun's car keys to him during the 9:00 A.M. meeting, thus depriving Poeun of his keys for approximately three hours.

As ordered, Poeun provided the citation to the Sheriff's Office the same day.

Plaintiffs assert that Defendants violated Poeun's rights under the Fourth Amendment, the Fifth Amendment, the Fourteenth Amendment (under both substantive and procedural due process theories), the Constitution of the State of California, and California Government Code §§ 3303(b), 3303(c), 3303(g), 3303(i), and 3500, et seq. Pls' Mot., ECF No. 5, at 5–

---

1. While the plethora of legal criteria does significantly add to the court's work, it does little to add to the significance of the case, or for that matter, aid in analysis of the remarkable asserted facts. At most, addressing those issues demonstrates the court's devotion to our precious liberties.

2. The fact that some of the causes of action lie, hardly answers the question of whether this suit should have been brought.

3. These facts are taken from the allegations in the Plaintiffs' First Amended Complaint, ECF No. 5, at 4, unless otherwise noted. The allegations are taken as true for purposes of this motion only. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

12. Plaintiffs further assert claims for intentional and negligent infliction of emotional distress. *Id.* at 13–14. Plaintiffs seek actual damages, injunctive and declaratory relief, civil penalties, attorneys fees and costs, and "constitutional tort damages." *Id.* at 13–15.

## B. Defendants' Motion to Dismiss

On July 3, 2012, Defendants filed the motion to dismiss presently before the court, *see* Defs' Mot., ECF No. 9, which Plaintiffs oppose, Pls' Opp'n, ECF No. 15.

## II. STANDARD FOR A MOTION TO DISMISS

A Federal Rule of Civil Procedure 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id.* at 1949–50. *Iqbal* and *Twombly* therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Id.; Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[4]

"Plausibility," as it is used in *Twombly* and *Iqbal,* does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990).

## III. ANALYSIS

### A. The San Joaquin County Sheriff's Office as Defendant

Defendants argue that the San Joaquin County Sheriff's Office should be dismissed as a defendant because it is a subdivision of the County of San Joaquin ("County") and "suing both the San Joaquin County Sheriff's Office and County is redundant." Defs' Mot., ECF No. 9, Att. 1, at 12.[5]

---

**4.** The court also may consider certain limited evidence on a motion to dismiss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. *See Mullis v. United States Bankr. Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987); *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987).

**5.** Page numbers cited herein refer to the court's electronic pagination system.

■ A number of Plaintiffs' claims for relief are brought under the California Public Safety Officers Procedural Bill of Rights Act ("POBRA"). Cal. Govt. Code §§ 3300, et seq. Section 3309.5(a) of POBRA provides, "It shall be unlawful for any *public safety department* to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter." Cal. Govt. Code § 3309.5(a) (emphasis added). Because the statute explicitly provides that public safety departments are liable for violations of POBRA, and the court assumes that the San Joaquin County Sheriff's Office is a public safety department, the San Joaquin County Sheriff's Office is properly named as a defendant in this action.

Defendants' *motion to dismiss the* San Joaquin County Sheriff's Office as a named defendant therefore fails.

### B. Moore's Entitlement to Qualified Immunity

Defendants argue that Moore is entitled to qualified immunity on all of Poeun's 42 U.S.C. § 1983 claims and should be dismissed as an individual defendant. Defs' Mot., ECF No. 9, Att. 1, at 12–14.

■ The doctrine of qualified immunity "protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Tibbetts v. Kulongoski,* 567 F.3d 529, 535 (9th Cir.2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court established a two-pronged inquiry for determining

whether qualified immunity applies in a given situation: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 201, 121 S.Ct. 2151 (citations omitted).[6]

■ Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). A right is clearly established only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

■ If the court determines, however, that no constitutional violation occurred, the qualified immunity inquiry is at an end. *Aguilera v. Baca,* 510 F.3d 1161, 1167 (9th Cir.2007). The court addresses whether the facts as alleged make out a violation of a constitutional right in the following sections of this order, and when necessary, analyzes Moore's entitlement to qualified immunity.

### C. Fourth Amendment Claim

Defendants argue that Poeun's Fourth Amendment claim fails because Moore had probable cause to stop Poeun for multiple violations of the vehicle code and because Moore's retention of Poeun's car keys was not so unreasonable as to constitute an illegal seizure. Defs' Mot., ECF No. 9, Att. 1, at 14–15.

At issue is whether the following incidents, as alleged, violated Poeun's Fourth

---

**6.** The court in *Saucier* established these considerations as a strict two-step process through which lower courts should move sequentially. 533 U.S. at 200–01, 121 S.Ct. 2151. In *Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), however, the Court held that lower courts have discretion to decide which of the two prongs to consider first.

Amendment right to be free of unreasonable searches and seizures: (1) Moore's stop of Poeun; and (2) Moore's deprivation of Poeun's car keys.

#### i. Moore's Stop of Poeun

▮ The Ninth Circuit has provided that, while "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights," *Garrity v. State of N.J.*, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Constitution does not afford public employees greater workplace rights than those enjoyed by their private sector counterparts. *Aguilera*, 510 F.3d at 1167 (9th Cir.2007). A law enforcement agency has the authority as an employer to direct its officers to remain on duty and to answer questions from supervisory officers as part of a criminal investigation into the subordinates' alleged misconduct. *Id.* at 1168 (citing *Driebel v. City of Milwaukee*, 298 F.3d 622, 638 (7th Cir.2002); *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000); *United States v. Baird*, 851 F.2d 376, 380–82 (D.C.Cir.1988)). Moreover, a superior law enforcement officer may briefly stop and question a subordinate officer, as any police officer may do when he has a reasonable suspicion that criminal activity may be afoot. *Aguilera*, 510 F.3d at 1169, n. 4 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

▮ An investigatory stop (temporary detention) may be conducted without violating the Fourth Amendment's ban on unreasonable searches and seizures if the investigatory stop is otherwise lawful. *Arizona v. Johnson*, 555 U.S. 323, 326, 129 S.Ct. 781, 784, 172 L.Ed.2d 694 (2009) (discussing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In a traffic-stop setting, an investigatory stop is lawful "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Id.* at 327, 129 S.Ct. 781.

▮ To initiate an investigatory stop of a motorist, there must "at least exist reasonable suspicion that the motorist is engaging in illegal activity." *Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011). To form a reasonable suspicion, an officer must have "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained engaged in criminal activity." *Id.* (citing *United States v. Lopez–Soto*, 205 F.3d 1101, 1105 (9th Cir.2000)).

▮ "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

▮ The first issue here presented is whether Poeun, a deputy sheriff, was seized without the existence of probable cause.[7] The facts as alleged establish that

---

**7.** In *Aguilera v. Baca*, the Ninth Circuit expounded on the "seizure" portion, as opposed to the "probable cause" portion, of this inquiry. As to the question of whether a subordinate officer was seized, the Ninth Circuit provided, "Since the Fourth Amendment does not protect against the threat of demotions or job loss, the relevant constitutional inquiry is whether a reasonable deputy in the position of the plaintiff[ ] would have feared detention if he had refused to obey the commands of his superior officers." *Aguilera*, 510 F.3d at 1161 (citing *United States v. Anderson*, 663 F.2d 934, 939 (9th Cir.1981)). In this inquiry, the court must "distinguish between a department's actions in its capacity as an employer and its actions as the law enforcement arm of the state." *Id.* (citing *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Garrity*, 385 U.S. at 493, 87 S.Ct. 616).

When considering whether subordinate officers were seized without the existence of probable cause, this circuit considers the ex-

Moore "told [Poeun] that he would be cited for speeding," that "Moore advised Poeun he had observed him speeding as well as running a stop sign," and that "Moore ordered Poeun to issue himself a traffic citation admitting to violations of the California Vehicle Code."

Speeding and running a stop sign are vehicular violations which would have given Moore probable cause to stop Poeun. While the facts do not allege that Poeun had been speeding and ran a stop sign, the facts also do not allege that Poeun had *not* been speeding and had *not* run a stop sign, or even that Moore lacked a basis for believing that Poeun had been speeding and had run a stop sign. Because Plaintiff's complaint does not address whether Moore had probable cause to stop Poeun, and Plaintiffs must make at least some factual allegations that Moore lacked probable cause in order to properly claim that the seizure was unreasonable under the Fourth Amendment, the court finds that Plaintiffs' complaint lacks sufficient facts to make out a Fourth Amendment claim based on Moore's stop of Poeun. Defendants' motion to dismiss Plaintiffs' Fourth Amendment claim is therefore granted as to Moore's stop of Poeun, with leave to amend.

### ii. Moore's Deprivation of Poeun's Car Keys

 A seizure within the meaning of the Fourth Amendment results if "there is some meaningful interference with an individual's possessory interests in that property." *Miranda v. City of Cornelius,* 429 F.3d 858, 862 (9th Cir.2005) (citing *Soldal v. Cook County,* 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)). The Fourth Amendment protects against unreasonable interferences in property interests regardless of whether there is an invasion of privacy. *Id.* (citing *Soldal,* 506 U.S. at 62–64, 113 S.Ct. 538).

 "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions. The burden is on the Government to persuade the district court that a seizure comes under one of a few specifically established exceptions to the warrant requirement." *United States v. Hawkins,* 249 F.3d 867, 872 (9th Cir.2001) (citing *Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *United States v. Huguez–Ibarra,* 954 F.2d 546, 551 (9th Cir.1992)).

Defendants argue that, "It is not unreasonable for Moore to retain Poeun's car keys during the three-hour time period because Poeun did not have his driver's license and could not verify his identity." Defs' Mot., ECF No. 9, Att. 1, at 15. The court interprets Defendants' statement as an argument that Moore's seizure of Poeun's car keys falls within the "commu-

perience level of the subordinate officer; whether the treatment was consistent with that allowed by department guidelines or general policy; the occurrence of physical contact or threats of physical restraint; explicit refusal of permission to depart; isolation of the subordinate officer; permission to use the restroom without accompaniment; the subordinate officer's being informed that he was the subject of a criminal investigation; whether the subordinate officer was spoken to in a menacing or threatening manner; whether the subordinate officer was under constant surveillance; whether superior officers denied a request to contact an attorney or union representative; the subordinate officer's ability to retain law enforcement equipment, including weapons and badges; the duration of detention; and the subordinate officer's receipt of overtime pay. *Aguilera,* 510 F.3d at 1169 (citing *Driebel,* 298 F.3d at 622–49).

In this case, Defendants do not dispute that a seizure occurred, but instead, argue that the facts alleged in Plaintiffs' complaint show that Moore had probable cause to stop Poeun.

nity caretaking" exception to the warrant requirement.

An impoundment may be proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle. *Miranda*, 429 F.3d at 865 (citing *United States v. Gutierrez*, 995 F.2d 169, 171 (9th Cir.1993)). The violation of a traffic regulation justifies impoundment of a vehicle if the driver is unable to remove the vehicle from a public location without continuing its illegal operation. *Id.* The decision to impound a vehicle after the driver has violated a vehicle regulation must consider the location of the vehicle, and whether the vehicle was actually "impeding traffic or threatening public safety and convenience" on the streets, such that impoundment was warranted. *Id.* (citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000, n. 5 (1976)). An officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers. *Id.* at 866 (citing *United States v. Squires*, 456 F.2d 967, 970 (2d Cir.1972)).

A construction of Plaintiffs' allegations in the light most favorable to Poeun is that Poeun's vehicle was parked outside, and in the vicinity of, the San Joaquin County Sheriff's Department. *See* Pls' First Am. Compl., ECF No. 5, at 4 ("Poeun arrived in his personal vehicle for work at the Department."). The facts as alleged establish that Moore impounded Poeun's vehicle through his deprivation of Poeun's car keys. The facts also indicate that Poeun did not have a drivers' license, and it would be unlawful to operate his car without one.

Nonetheless, any argument that Moore could make justifying his impoundment of Poeun's vehicle under the "community caretaking" doctrine is undercut by the fact that Moore returned Poeun's keys after three hours. That is, if Poeun's control of the vehicle presented no threat to public safety at 9:00 A.M., when Moore returned his keys, it is likely that he concluded that Poeun's control of the vehicle presented no threat to public safety three hours earlier, when Moore had taken the keys in the first instance. How he arrived at that conclusion in light of the absence of a license, is, like much of this case (on both sides), difficult to understand. Nonetheless, the allegations make out a Fourth Amendment violation. The right to be free from unreasonable interferences in property was longstanding and "clearly established" at the time of the incident alleged. Thus, Moore is not entitled to qualified immunity for this aspect of Plaintiffs' Fourth Amendment claim.

## D. Fifth Amendment Claim

Defendants argue that Poeun's Fifth Amendment claim fails because there was no criminal charge or criminal proceeding initiated against Poeun and because Moore was not required to advise Poeun of his *Miranda* rights. Defs' Mot., ECF No. 9, Att. 1, at 16–19. At oral argument, Plaintiffs' counsel conceded that Plaintiffs' factual allegations do not make out a Fifth Amendment claim. Plaintiffs' Fifth Amendment claim is therefore dismissed without leave to amend.

## E. Fourteenth Amendment Substantive Due Process Claim

Defendants argue that Poeun's Fourteenth Amendment substantive due process claim fails because the Fourth Amendment reasonableness standard, instead of the Fourteenth Amendment substantive due process standard, applies to the facts of this case and, even if the substantive due process standard were to

apply, Moore's actions were not sufficiently "conscience-shocking" to have violated Poeun's substantive due process rights. Defs' Mot., ECF No. 9, Att. 1, at 19–21.

 Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims. *County of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Substantive due process analysis is inappropriate in this case only if Plaintiffs' claim is "covered by" the Fourth Amendment. *Id.* at 843, 118 S.Ct. 1708.

 The incident alleged does not merely present the issue of the reasonableness of a sheriff's stop and seizure of a civilian but, instead, adds complexity to the issue by implicating potentially unlawful administrative and employment consequences to Moore's alleged stop and seizure. These additional aspects of the facts presented may well fall outside of the parameters of the Fourth Amendment. Plaintiffs' claim is therefore not wholly "covered by" the Fourth Amendment and, thus, substantive due process analysis is not inappropriate.

"The Supreme Court has described the 'fundamental' rights protected by substantive due process as 'those personal activities and decisions that this Court has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected by the Fourteenth Amendment.' Those rights are few, and include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment." *U.S. v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir.2012)

(citations omitted). The facts here presented do not implicate a violation of any of the fundamental rights identified by the Supreme Court. Moore's action therefore need only bear a reasonable relation to a legitimate state interest to be justified when viewed through the lens of substantive due process.

 In analyzing abusive executive action, the Supreme Court has provided that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.' " *County of Sacramento*, 523 U.S. at 846, 118 S.Ct. 1708 (internal citations omitted). The cognizable level of executive abuse of power in a substantive due process analysis is that which "shocks the conscience" and "violates the decencies of civilized conduct." *Id.* at 846–47., 118 S.Ct. 1708

 The court determines that, even when construing the allegations in the light most favorable to Plaintiff, Moore's actions neither "shock the conscience," nor do they "violate[ ] the decencies of civilized conduct." Plaintiffs therefore fail to establish a substantive due process violation. Defendants' motion to dismiss Plaintiff's Fourteenth Amendment substantive due process claim is granted, with leave to amend.

## F. Fourteenth Amendment Procedural Due Process Claim

 To succeed on a procedural due process claim, a plaintiff must demonstrate that: (1) he had a constitutionally protected liberty or property interest; (2) the deprivation of that interest by the government; and (3) a lack of adequate process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993).

Plaintiffs assert that "[t]he procedural due process rights at issue here are those to which Poeun was entitled under the

Public Safety Officers Procedural Bill of Rights Act." Pls' Mot., ECF No. 15, at 8.

 A state statute can give rise to federally protected due process interests. *Groten v. California*, 251 F.3d 844, 850 (9th Cir.2001) (citing *Parks v. Watson*, 716 F.2d 646, 656–57 (9th Cir.1983)).[8] State statutes providing for particular procedures may create entitlements protected by due process. *Id.* While not every procedural statute creates entitlements, if the procedural requirements were intended to operate as a "significant substantive restriction" on the agency's actions, a property interest may be created. *Id.*

In *Skelly v. State Personnel Bd.*, the California Supreme Court provided that "the California statutory scheme regulating civil service employment confers upon an individual who achieves the status of 'permanent employee' a property interest in the continuation of his employment which is protected by due process." 15 Cal.3d 194, 206, 539 P.2d 774, 783, 124 Cal.Rptr. 14 (Cal.1975). The property interest that California public safety officers have in their continued employment is derived from POBRA's Section 3304(b), which applies after a police officer completes his or her probationary period of employment and requires an administrative appeal before a police officer may suffer a "punitive" action. Cal. Govt. Code § 3304(b); *see also Jordan v. Kirkman*, No. 07–cv–6575, 2008 WL 4601297, at *2, n. 4 (C.D.Cal. Oct. 15, 2008) (citing *Fleisher v. Signal Hill*, 829 F.2d 1491, 1494–95 (9th Cir.1987)).

 Here, Plaintiffs' facts allege that Poeun had been a employee of the Sheriff's Office since 2006—around 5 years before the alleged incident occurred. While the facts do not explicitly state whether Poeun had attained permanent status in the Sheriff's Office, the court can reasonably infer that Poeun was considered a "permanent employee." Therefore, Poeun had a property interest in his continued employment which is protected by due process.

 There are no facts alleged, however, from which the court can reasonably infer that Poeun was in any way deprived of his property interest in continued employment at the Sheriff's Office. Plaintiffs therefore fail to allege sufficient facts to establish a violation of Poeun's procedural due process rights. Defendants' motion to dismiss Plaintiffs' procedural due process claim is granted, with leave to amend.

### G. California Constitution Claim

 Citing *Katzberg v. Regents of Univ. of Cal.*, 29 Cal.4th 300, 127 Cal. Rptr.2d 482, 58 P.3d 339 (Cal.2002), Defendants argue that Plaintiffs are foreclosed, as a matter of law, from seeking tort damages for an alleged violation Article 1, § 7 of the California Constitution.[9]

The Court's determination in *Katzberg*, however, was limited to the narrow issue of whether money damages are available in response to a claim for violation of the due process *liberty* interest; it did not address the issue of whether money damages are permissible remedies for violation

---

8. Plaintiffs improperly cite *Groten's* 3–part test for determining whether a *federal*, as opposed to a state, statute creates a right enforceable under section 1983. The proper question, however, is whether POBRA creates a property interest.

9. The California Constitution, Cal. Const., art. I, § 7, prohibits the government from depriving a person of property without due process of law. *Hanford Executive Management Employee Ass'n v. City of Hanford*, No. 11–cv–828, 2011 WL 5825691 at *12 (E.D.Cal. Nov. 17, 2011). The procedural due process clause of the California Constitution exists "to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner." *Id.*

of the due process *property* interest. *Walls v. Central Contra Costa Transit Auth.*, No. 08–cv–224, 2012 WL 581362, at *3 (N.D.Cal. Feb. 22, 2012) (citing *Katzberg*, 29 Cal.4th at 307, 127 Cal.Rptr.2d 482, 58 P.3d 339).

Even as to the question of whether money damages are available for a violation of the due process liberty interest, the Court in *Katzberg* found that "courts, exercising their authority over the common law, may, in appropriate circumstances, recognize a tort action for damages to remedy a constitutional violation." *Katzberg*, 29 Cal.4th at 325, 127 Cal.Rptr.2d 482, 58 P.3d 339. The Court further suggested, however, that the availability of "adequate alternative remedies" in a given circumstance "militates against judicial creation of a tort cause of action for damages." *Id.* at 327, 127 Cal.Rptr.2d 482, 58 P.3d 339.

Plaintiffs do not address Defendants' argument as to Plaintiffs' California Constitution claim in their opposition to Defendants' motion to dismiss.

As a matter of common sense, as well as common law, a deprivation of property is a less egregious loss than a loss of liberty. Given the court's holding in *Katzberg*, the court concludes that plaintiff has no claims under the California Constitution for money damages.

## H. Cal. Govt. Code § 3303 Claims

The Public Safety Officers Procedural Bill of Rights Act ("POBRA") is located at California Government Code §§ 3300, et seq., and sets forth a list of basic rights and protections which must be afforded to all peace officers by the agencies that employ them. *Baggett v. Gates*, 32 Cal.3d 128, 135, 185 Cal.Rptr. 232, 649 P.2d 874 (Cal.1982). The various procedural protections of POBRA "balance the public interest in maintaining the efficiency and integrity of the police force with the police officer's interest in receiving fair treat-

ment." *Jackson v. City of Los Angeles*, 111 Cal.App.4th 899, 909, 4 Cal.Rptr.3d 325 (Cal.2003).

Section 3303 of POBRA provides: "When any public safety officer is under investigation and subjected to interrogation by his or her commanding officer ... that could lead to punitive action, the interrogation shall be conducted under the following conditions...." Cal. Govt. Code § 3303. "Punitive action" is defined in section 3303 as "any action that *may* lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." *Id.* (emphasis added).

California courts interpreting the "punitive action" definition of section 3303 have determined that POBRA "does not require a showing that an adverse employment consequence has occurred or is likely to occur." *Paterson v. City of Los Angeles*, 174 Cal.App.4th 1393, 1400, 95 Cal.Rptr.3d 333, 338–39 (Cal.App. 2 Dist., 2009) (citing *Otto v. Los Angeles Unified School Dist.*, 89 Cal.App.4th 985, 997, 107 Cal.Rptr.2d 664 (Cal.Ct.App.2001)). Rather, "punitive action ... may exist when action is taken which may lead to the adverse consequences ... at some future time." *Id.* (citing *Otto*, 89 Cal.App.4th at 996, 107 Cal.Rptr.2d 664). However, section 3303 also provides: "This section shall not apply to any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer, *nor shall this section apply to an investigation concerned solely and directly with alleged criminal activities.*" Cal. Govt. Code § 3303(i) (emphasis added).

Plaintiffs' do not present any facts to indicate that Moore's questioning of Poeun concerned anything other than al-

leged vehicular violations. Because any discussion between Moore and Poeun appears to be "concerned solely and directly with alleged criminal activities," such discussion falls within section 3303(i) and Plaintiffs' § 3303 claims are foreclosed. Defendants' motion to dismiss Plaintiffs' § 3303 claims is granted, with leave to amend.

## I. Cal. Govt. Code § 3500 Claim

Under the Meyers–Milias–Brown Act ("MMBA"), Cal. Govt. Code § 3500, et seq., a public agency is required to meet and confer in good faith with the representatives of a recognized employee organization (here, the San Joaquin Deputy Sheriffs' Association), before determining a policy or course of action "regarding wages, hours, and other terms and conditions of employment." Cal. Govt. Code § 3505.

Plaintiffs cite *Redwoods Community College Dist. v. Public Employment,* 159 Cal.App.3d 617, 618, 205 Cal.Rptr. 523 (Cal.Ct.App.1984), for the proposition that "Under federal and California labor cases an individual employee has a right to be represented by his or her union at certain kinds of interviews with management." The court notes that while "[n]o court appears to have set a firm outer limit to this right of representation," "the facts that the employee requested the representation, that the interview was investigatory, and that the employee reasonably believed that the interview might result in disciplinary action against him or her ... have been deemed significant." *Id.* at 618–19, 205 Cal.Rptr. 523.

Subsequent to the court's decision in *Redwoods Community College,* the California Court of Appeal for the Fourth District provided, in interpreting the MMBA, that "[a] public agency's action must have a *significant effect* on wages, hours and other terms and conditions of employment before it will be subject to the provisions of the MMBA. *Riverside Sherriff's Ass'n v. County of Riverside,* 106 Cal.App.4th 1285, 1290, 131 Cal.Rptr.2d 454 (Cal.Ct. App.2003) (emphasis added).

 The court finds it not unreasonable to infer that Poeun believed that the interview might result in disciplinary action. It is also reasonable to infer Moore's questioning of Peoun, both outside the Sheriff's Office, and later in Moore's office, was "investigatory" because any questioning concerned the alleged vehicular violations.

Nonetheless, Plaintiffs fail to allege any effect that Moore's actions had on Poeun's wages, hours, or other terms and conditions of employment. Plaintiffs also fail to allege that Poeun requested representation.

The court concludes that Plaintiffs' Cal. Govt. Code § 3500 claim is insufficiently pled.

Defendants' motion to dismiss Plaintiff's § 3500 claim is granted, with leave to amend.

## J. Claim for Injunctive Relief

 Defendant argues that: (1) the San Joaquin County Deputy Sheriff's Association lacks standing to seek injunctive relief pursuant to California Government Code § 3309.5(d)(1);[10] and (2) injunctive

---

**10.** An organization has representational standing if: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Associated General Contractors of America v. Metro. Water Dist.,* 159 F.3d 1178, 1181 (9th Cir.1998). Only where litigation would result in profound conflicts of interest is associational standing typically considered inappropriate. *Retired Chicago Police Ass'n v. City of Chicago,* 76 F.3d 856 (7th Cir.1996).

relief is not appropriate.[11]

California Government Code § 3309.5, under which Plaintiffs' seek injunctive relief, provides for injunctive relief to remedy violations of the rights provided under POBRA. *See* Cal. Govt. Code § 3309.5. Because the court has determined that, as pled, Poeun fails to sufficiently establish claims under POBRA, the right to seek injunctive relief under § 3309.5 is foreclosed to Plaintiff.

Defendants' motion to dismiss Plaintiffs' claim for injunctive relief is granted with leave to amend.

### K. Intentional Infliction of Emotional Distress Claim

To state a claim for intentional infliction of emotional distress, a plaintiff must plead: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) that the plaintiff suffered severe or extreme emotional distress; and (3) that the plaintiff's injuries were actually or proximately caused by the defendant's outrageous conduct. *Berkley v. Dowds,* 152 Cal.App.4th 518, 533, 61 Cal.Rptr.3d 304 (2007). The conduct must be so extreme as to "exceed all bounds of that usually tolerated in a civilized community." *Unterberger v. Red Bull N. America, Inc.,* 162 Cal.App.4th 414, 423, 75 Cal.Rptr.3d 368 (2008) (citations omitted). The distress must be so severe that "no reasonable [person] in a civilized society should be expected to endure it." *Fletcher v. W.*

*Nat'l Life Ins. Co.,* 10 Cal.App.3d 376, 397, 89 Cal.Rptr. 78 (1970).

Given the facts as pled, the court cannot reasonably conclude that Moore acted in a way that was so extreme that it exceeded all bounds of that usually tolerated in a civilized community. Nor can the court find that Poeun's resulting distress from the incident was so severe that no reasonable person in a civilized society should be expected to endure it.

Plaintiff's factual allegations are therefore insufficient to establish a claim for intentional infliction of emotional distress. Defendants' motion to dismiss said claim is granted. Because of the allegations made, it is clear to the court that leave to amend need not be granted.

### L. Negligent Infliction of Emotional Distress Claim

The negligent causing of emotional distress is not an independent tort, but the tort of negligence; the traditional elements of duty, breach of duty, causation, and damages apply. *Burgess v. Superior Ct.,* 2 Cal.4th 1064, 1072, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (Cal.1992). To establish a claim for negligent infliction of emotional distress under a "direct victim" theory, Poeun must be alleged to have suffered "serious emotional distress." *See id.* at 1073, 9 Cal.Rptr.2d 615, 831 P.2d 1197.

Plaintiffs allege that Poeun suffered "severe emotional distress" and "physical and emotional injuries, including

---

11. California allows a final injunction in the following circumstances: "(1) Where pecuniary compensation would not afford adequate relief; (2) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief; (3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or (4) Where the obligation arises from a trust." Cal. Civ. Code § 3422.

Additionally, as Defendants note, "[i]njunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Camp v. Board of Supervisors,* 123 Cal.App.3d 334, 356, 176 Cal.Rptr. 620 (Cal.Ct.App. 1981).

general physical upset and manifestations of severe emotional distress." Pls' Am. Compl., ECF No. 5, at 14. The court finds these allegations conclusory and not entitled to a presumption of truth. Because Plaintiffs have provided no further factual allegations to support this claim, Plaintiffs' negligent infliction of emotional distress claim is dismissed. Again, given the allegations, leave to amend will not be granted.

## IV. CONCLUSION

Accordingly, the court ORDERS that:

- Defendants' motion to dismiss the San Joaquin County Sheriff's Office as a named defendant is DENIED.
- Defendants' motion to dismiss Plaintiffs' Fourth Amendment claims is GRANTED, with leave to amend, as to Plaintiffs' allegations regarding Moore's stop of Poeun,[12] but DENIED as to Plaintiffs' allegations regarding Moore's deprivation of Poeun's car keys.
- Defendants' motion to dismiss Plaintiffs' Fifth Amendment claim is GRANTED, without leave to amend.
- Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment substantive and procedural due process claims is GRANTED, with leave to amend.
- Defendants' motion for qualified immunity as to Defendant Moore is GRANTED as to all of Plaintiffs' constitutional claims as pled, except for Plaintiffs' Fourth Amendment claim as to Moore's deprivation of Poeun's car keys. Consideration of qualified immunity is deferred to further pleadings, if any.

- Defendants' motion to dismiss is GRANTED as to Plaintiffs' California Constitution claim, without leave to amend.
- Defendants' motion to dismiss is GRANTED as to Plaintiffs' Cal. Govt. Code § 3303 claims, Plaintiffs' Cal. Govt. Code § 3500 claim, and Plaintiffs' claim for injunctive relief. Plaintiff is granted leave to amend each of these claims.
- Defendants' motion to dismiss Plaintiffs' intentional and negligent infliction of emotional distress claims is GRANTED, without leave to amend.
- Amendments to the complaint, if any, shall be filed within thirty (30) days; oppositions are due fourteen (14) days thereafter.

IT IS SO ORDERED.[13]

---

12. The fact that the court feels compelled to grant leave to amend various causes of action does not mean that the causes of action should be re-alleged. The court can only hope that calmer heads will prevail.

13. Having done my duty in examining the allegations, the court cannot help but wonder whether there is some other motive which has led the plaintiff to attempt to make a federal case out of the puerile facts.