Filed 5/21/15  Kinner v. Governing Bd. Orange County School Dist. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROSE KINNER, | |
| Appellant, | G049676 |
| v. | (Super. Ct. No. 30-2012-00600599) |
| GOVERNING BOARD OF THE ORANGE UNIFIED SCHOOL DISTRICT, | O P I N I O N |
| Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila B. Fell, Judge.  Affirmed.

Broedlow Lewis, Jeffrey Lewis, and Kelly Broedlaw Dunagan for Appellant.

Parker & Covert, Jonathan S. Mott and Steven Montanez for Respondent.

\*       \*       \*

After the Board of Education (the Board) of the Orange Unified School District (the District) terminated Rose Kinner's employment, Kinner petitioned the Orange County Superior Court for a writ of mandate ordering the Board to reinstate her to her former job. The court denied Kinner's petition and entered judgment in the Board's favor. On appeal from the judgment, Kinner contends the District used a biased investigator, failed to notify her of a disciplinary interview, and failed to ensure the presence of two adverse witnesses at her administrative appeal hearing. She concludes the hearing was unfair and that the District violated her due process rights. We disagree and affirm the judgment.

FACTS

In July 2008, the District transferred Kinner, then a 12-year employee, to a position at Parkside Preschool and Kindergarten (Parkside). Kinner complained to Jamie Brown (then the District's head of classified employee discipline) that the Parkside job was an office manager position, yet the District was classifying and paying her as a senior secretary. In March 2010, Kinner requested in writing that the District change her job classification to office manager. Brown denied Kinner's request.

On November 28, 2011, Rachelle Dale, the District's coordinator of special education, issued Kinner a letter of reprimand. Inter alia, the letter stated the following. In October 2011, a District employee had received a phone call from Maria Huerta, the Spanish-speaking parent of a Parkside student. Huerta reported she was having trouble communicating with Parkside because, when she phoned Parkside, she was usually treated rudely and often was not connected to a Spanish translator. Huerta also complained that when she went into the Parkside office, Kinner was rude to her and often would not respond when Huerta asked for assistance. On November 9, 2011, District employee Ambar Matzuy had phoned Parkside on Huerta's behalf, with Huerta on the

2

line, to assist Huerta in communicating. When Kinner answered the phone, Matzuy said, "'Rose, good afternoon, I have Eduardo's mom on the line with me and she wants to ask,'" at which point Kinner interrupted and said "in an angry tone, 'She needs to learn to speak English, she calls here every day.'" Matzuy responded, "'We have lots of parents in the District that do not speak the language; I am just trying to help her,'" then hung up. Huerta alleged she received a phone call later that day and recognized Kinner's voice telling her she was a "'f . . . ing Mexican'" and "'should go back to Mexico.'"

In response to the letter of reprimand, Kinner sent the District a letter dated December 1, 2011, contending she did not know Huerta was on the line during the Matzuy phone conversation and that Kinner's exact words to Matzuy had been: "She needs to learn to speak English. She calls here every day, asking for a Spanish speaker. When one is not available, she gets mad and she hangs up on me and other personnel within our office." Kinner denied making the alleged phone call to Huerta. Kinner alleged Huerta was well known for making complaints to the District about many matters and against many employees. Kinner claimed the District had not followed its standard policy of forwarding complaints to an "employee's direct supervisor for them to investigate and respond," and had instead accepted Huerta's allegations as true without investigating.

In December 2011, the District transferred Kinner to a senior secretary position at the District office. Kinner was upset about the transfer, believing she would now have "to work directly for [her] accusers."

On January 2, 2012, Kinner e-mailed Ed Kissee, the District's assistant superintendent of human resources, to request a transfer.

3

On January 9, 2012, District employee Peggy Peake informed Kissee of the following. On January 5, 2012, Peake had called Kinner to wish her a happy birthday. During that conversation, Kinner told Peake she intended to meet with Kissee and then falsely allege he had touched her inappropriately. Peake said she disapproved of Kinner's plan. Kinner replied, "I know it's wrong but I'm going to do it anyway. I'm going to treat the District the way the District is treating me." Kinner said she was working on a "project" that would be completed in six months. The project would be "'mind-blowing, and an embarrassment to a number of employees and [the District] in general,'" and would be posted on YouTube.

Peake told Kissee, "I'm not sure how much of this was merely venting as opposed to describing real plans."

About 10 minutes before Kissee had met with Peake, he had received an e-mail from Kinner asking him, "[W]hat time should I meet in your office with my representative/witness?", concerning her request for a transfer out of the special education department.

Kissee and the District superintendent decided to ask Brown to investigate Peake's report. They chose Brown because he had been the District's executive director of human resources for many years, had retired at the end of 2010, and had the expertise to investigate Peake's allegations, and because Kissee was the District's only currently employed human resources professional and could not investigate the matter due to his involvement.

On January 17, 2012, Brown interviewed Kinner. Also present were Kinner's union representative (Brady Bailo) and Marcia Schoger, administrative director of special education, who served as the note-taker for the meeting. Kinner admitted making the alleged statements to Peake: "I said that's what you did to me and that's what I should do to you." Schoger placed Kinner on administrative leave with pay.

On January 31, 2012, the District notified Kinner that it recommended her employment be terminated. The statement of charges included a notice pursuant to *Skelly v. State Personnel Board* (1975) 15 Ca1.3d 194 (*Skelly*), advising Kinner of her opportunity to appear (along with a representative if desired) before a hearing officer in order to refute the charges, present her version of events, and explain why she should not be dismissed.

On February 24, 2012, Kinner and her representative, Bailo, appeared at the *Skelly* due process hearing. On March 6, 2012, the *Skelly* hearing officer notified Kinner and Bailo (1) that he endorsed the recommended disciplinary action of terminating Kinner's employment with the District and (2) that Kinner could appeal the decision to the Board.

On March 13, 2012, the District superintendent notified Kinner that the District was suspending her without pay during the pendency of her appeal. On March 22, 2012, Kinner and Bailo appeared at a *Skelly* hearing to appeal the suspension without pay. On March 23, 2012, the *Skelly* hearing officer notified Kinner of his decision to uphold the suspension without pay.

Kinner appealed from the District's proposed notice to terminate her employment. On April 19, 2012, Kinner and Bailo appeared at an evidentiary hearing to appeal the District's decision to terminate Kinner's employment (the administrative appeal hearing). Inter alia, Kinner testified she never intended specifically to bring harm to Kissee and other District staff and that she likes to vent. The hearing officer (Attorney Karen T. Meyers) issued her proposed decision on May 10, 2012. Based on the evidence and an assessment of the credibility of the witnesses at the hearing, the hearing officer recommended that the Board terminate Kinner's employment.

5

On July 26, 2012, at Kinner's request, she and her attorney addressed the Board in open session. In closed session, the Board approved the termination of Kinner's employment.

Kinner petitioned the Orange County Superior Court for a writ of mandate or administrative mandamus requiring the Board to reinstate her to her former job and to classify it as an office manager position.

In a detailed statement of decision, the court denied Kinner's writ petition and granted judgment in the Board's favor. The court exercised its independent judgment and concluded the Board "proceeded in the manner required by law."

## DISCUSSION

Kinner contends the administrative trial was unfair and that she was denied due process because (1) the District's investigator, Brown, was biased against her, (2) Brown surprised her and gave her no forewarning of the subject matter of his interview of her, and (3) at the administrative appeal hearing, the District denied her the right to confront and cross-examine Huerta and Dale, "yet at the same time the District heavily relied on statements attributed to Huerta and Dale about Kinner."

Generally, administrative adjudications (i.e., quasi-judicial determinations) are reviewable by administrative mandamus under Code of Civil Procedure section 1094.5,[1] whereas quasi-legislative determinations are reviewable by ordinary mandamus. (9 Witkin, Cal. Procedure (5th ed. 2008) Administrative Proceedings, § 148, p. 1281.) Under section 1094.5, a reviewing court inquires "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (*Id.*, subd. (b).) "Abuse of

---

[1] All statutory references are to the Code of Civil Procedure.

6

discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid*.)

When an administrative adjudicatory decision substantially affects a fundamental vested right, the trial court exercises its independent judgment in reviewing the evidence in the administrative record; on appeal, the reviewing court considers only whether the trial court's findings are supported by substantial evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816-817, 823–824; *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [trial court exercising its independent judgment on the evidence must find an abuse of discretion if administrative findings not supported by "weight of the evidence"].)[2] Although the "foundational factual findings must be sustained if supported by substantial evidence . . . , the ultimate determination of whether the administrative proceedings were fundamentally fair is a question of law to be decided on appeal." (*Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1443.)

*Brown's Alleged Bias*

Kinner contends Brown had a history of animus toward her. At the administrative appeal hearing, she testified that, around the time the District transferred her to Parkside, she met with Brown and told him she was upset about being moved to an office manager position but paid as a senior secretary. According to Kinner, Brown had replied, "You know what, Rose? We can do whatever we want to do. If you don't like it, you can quit."

---

[2] A "protected public employee, has a fundamental and vested right in her continued permanent employment." *(Civil Service Com. v. Velez* (1993) 14 Cal.App.4th 115, 121; see also *Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 927 [fundamental vested rights often found in context of public employment].)

7

Whether Brown was biased against Kinner is a factual issue. Administrative Hearing Officer Meyers found Kinner's testimony in general was not credible. The court upheld Meyers' determination.

Substantial evidence supports the court's finding. In Kinner's own March 8, 2010 letter to the District, she stated she and Brown had a "lengthy discussion regarding the [Parkside] position and the changes that were to be made." The letter recounts Brown's statements and shows he offered substantive explanations regarding the propriety and fairness of Kinner's transfer. Brown told her Parkside was a program, not a school, and did not warrant an office manager, and that Parkside's administrator was a coordinator, and that coordinators have senior secretaries, not office managers. He told her that the District would move some classrooms within two years so Kinner would not be responsible thereafter for the students' daily needs.[3] Brown said the District could reassign her wherever it chose so long as she "'was not working above [her] job classification.'" This last statement by Brown, as recounted by Kinner in her letter, does not connote the animus reflected in Kinner's testimony recounting the same statement in different, less exact language.

On appeal, Kinner does not specify any bias exhibited by Brown during his January 2012 interviews of her and of Peake, or in the content of his investigative report.

Moreover, in Kinner's writ petition to the trial court below, she alleged that, because Brown was biased against her, Meyers's decision was procured by "corruption" within the meaning of section 1286.2 (grounds for vacating arbitration award). On appeal, Kinner has dropped that argument and now contends Brown's alleged bias gives the *appearance* the administrative appeal hearing was unfair, citing *Nightlife Partners, LTD. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 90.

---

[3] According to Kinner's letter, none of Brown's assurances had been carried out in the ensuing year and a half.

Even exercising our discretion to consider Kinner's contention raised on appeal, *Nightlife* does not support Kinner's contention. *Nightlife* held that an administrative hearing violated the petitioners' rights to due process because the attorney who had acted as the respondent city's advocate for denying the petitioners' application, then acted as the legal adviser to the hearing officer at the hearing. (*Nightlife Partners LTD.*, *supra*, 108 Cal.App.4th at pp. 85, 94.) Here, Brown was a witness for the District at the administrative appeal hearing, not an advisor to Meyers.

*Notice of Purpose of January 17, 2012 Interview*

On appeal, Kinner contends her rights under *NLRB v. J. Weingarten, Inc.* (1975) 420 U.S. 251 (*Weingarten*) were violated. Under *Weingarten*, an employee is entitled under the National Labor Relations Act (29 U.S.C. § 151 et seq.; the Act) to have his or her union representative present at an investigatory interview which the employee reasonably believes could result in disciplinary action. (*Weingarten*, at p. 252; *Redwoods Community College Dist. v. Public Employment Relations Bd.* (1984) 159 Cal.App.3d 617, 623.)

Kinner's representative, Bailo, was present at Brown's January 17, 2012 interview of her. Nonetheless, she asserts neither she nor Bailo was given prior notice of the purpose of the meeting and her *Weingarten* rights were thereby violated.

This assertion is supported only by her own testimony. At the administrative appeal hearing, Kinner testified: "[I]t has been brought to my attention that prior to the January 17th meeting, . . . Brown states that he made . . . Bailo aware of the contents of the hearing and the fact that it would address allegations that I had threatened [a District] administrative staff member. . . . Bailo repeatedly told me prior to that meeting and after in writing and in person that he had no idea why the meeting was being held, nor what the meeting was about . . . . Obviously, one of them [is] lying. As I stand here today, either I am suspect of my representation by . . . Bailo or [the District]

9

hasn't followed the appropriate due process in making [the union] aware of details to be discussed at the meeting."

The court found Brown advised Bailo "appropriately." It observed that Bailo represented Kinner at the hearing, but did not himself testify to refute Brown's claim he (Brown) had advised Bailo appropriately, nor had Bailo asked Brown any questions regarding the issue of notice when Bailo cross-examined Brown.

Substantial evidence supports the court's finding Brown properly notified Bailo. Brown's investigative report states: "I had called Bailo on January 13, 2012, to inform him of my intent to interview Kinner on January 17, 2012 . . . . I told Bailo that the District will meet with Kinner to discuss her transfer in accordance with the transfer provision of the collective bargaining agreement, but that an investigative interview would take place first. I also informed Bailo that the investigation could lead to disciplinary action. I told him it had been reported that Kinner had made threats against a member of the senior administrative staff." Thus, Kinner's assertion in her opening brief that Brown's reports omit "any mention that Brown had actually notified Kinner's representative," is simply untrue.[4]

As to whether *Kinner* received advance notice, the court found Kinner offered insufficient evidence to show the Board failed to inform her of the purpose of the interview. The court noted Kinner's testimony was "not even an unequivocal accusation that the Board failed to advise her of the subject matter of the interview." But the court did not address the threshold issue of which party bore the burden of proof to show *Weingarten* compliance (or lack thereof).

---

[4] As further evidence of Brown's notice to Bailo, the District cites Brown's declaration submitted to the trial court in support of the District's opposition to Kinner's writ petition. Brown declared he gave Bailo notice of the purpose of the interview. Brown's declaration, however, is not part of the administrative record and may not be considered, as it does not fall within an exception under section 1094.5, subdivision (e).

10

*Weingarten* does not expressly require an employer to provide an employee with advance notice of the purpose of a meeting.  But, in order for an employee to know whether an interview could result in disciplinary action (and to assert the right to have a representative present), the employee must be notified of the meeting's purpose.  In *Pacific Tel. & Tel. Co. v. NLRB* (9th Cir. 1983) 711 F.2d 134, the Ninth Circuit held the National Labor Relations Board "permissibly construed the *Weingarten* right to include the right to be informed prior to the interview of the subject matter of the interview and the nature of any charge of impropriety it may encompass and the right to a pre-interview conference with a union representative." (*Id*. at p. 136.)  "Without such information and such conference, the ability of the union representative effectively to give the aid and protection sought by the employee would be seriously diminished." (*Id.* at p. 137.)  This rationale is persuasive.

Nonetheless, we need not decide (1) whether Kinner was entitled to advance notice of the subject matter of the interview and a pre-interview conference with her representative, or, (2) assuming she was so entitled, whether the District bore the burden of showing at the hearing that it complied with those requirements.  Even if the answer to both questions were affirmative, the District's failure to notify Kinner or to produce evidence of such notice was harmless beyond all reasonable doubt.  (*Cramer v. Tyars* (1979) 23 Cal.3d 131, 139.)  The District showed it gave advance notice to Bailo, who, as a union representative, had a duty to properly represent Kinner, including conveying to her the purpose of the meeting.

11

*The Absence of Huerta and Dale as Witnesses at the Hearing*

Kinner contends she was denied due process because the District failed to produce Huerta (the Spanish-speaking parent) or Dale (the District employee who signed the letter of reprimand) as witnesses at the arbitration appeal hearing. Prior to the hearing, Bailo had requested Huerta's contact information from the District. At the hearing, Kinner stated she had asked, through Bailo, that both Huerta and Dale be present at the hearing, but "was told that he could not compel people to testify."

Hearing officer Meyers expressly refrained from making any findings supported only by Huerta's claims.[5] Furthermore, Meyers did not accept the contents of Dale's letter of reprimand to Kinner without independent evidentiary support.

Even though Huerta and Dale did not appear at the hearing, and even though Meyers based no findings exclusively on their out-of-court statements, Kinner contends her due process right to confront and cross-examine adverse witnesses was violated. Kinner's brief contains no reasoned argument or legal authority on (1) whether the District, because it submitted evidence containing Huerta's and Dale's out-of-court statements, had a duty to help Kinner locate or produce them as witnesses, or (2) whether the District could have, or should have, compelled them to testify. Kinner has thereby waived the issue. (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

*Cumulative Impact*

Because the only potential error was harmless, there is no prejudice to cumulate.

---

[5] Indeed, Meyers found the evidence was insufficient to establish Kinner was rude to Huerta when Huerta visited the school office or that Kinner made the alleged phone call to Huerta. Meyers found Kinner was not aware Huerta was listening during the phone call between Kinner and Matzuy.

# DISPOSITION

The judgment is affirmed.  The District shall recover its costs on appeal.


                                    IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


MOORE, J.