Filed 10/4/21  Dept. of Corrections and Rehabilitation v. Public Employment Relations Board CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

----

(Sacramento)

|  |  |
|---|---|
| DEPARTMENT OF CORRECTIONS AND REHABILITATION, | C088562 |
| Petitioner, | (PERB No. SA-CE-2047-S) |
| v. | |
| PUBLIC EMPLOYMENT RELATIONS BOARD, | |
| Respondent; | |
| CALIFORNIA ASSOCIATION OF PSYCHIATRIC TECHNICIANS, | |
| Real Party in Interest. | |

On a tip from an inmate that A.X., an employee of California's Department of

Corrections and Rehabilitation (CDCR), was planning to smuggle drugs into the prison

where she worked, CDCR's Office of Internal Affairs (OIA) opened a criminal

investigation, which led to A.X. being strip searched when she reported to work.  Before

the search commenced, A.X. requested that a representative be present from her union,

1

the California Association of Psychiatric Technicians (CAPT). OIA agents denied the request. A.X. was also informed that she had signed an 894-A employment identification card form (894-A form), which included her acknowledgement that she was subject to search on prison grounds. The search went forward and no contraband was found.

CAPT filed an unfair labor practice charge with the Public Employment Relations Board (PERB) alleging that by denying A.X.'s request that a CAPT representative be present for the search CDCR had violated Government Code section 3519, subdivisions (a) and (b) of the Ralph C. Dills Act (Dills Act) (Gov. Code, § 3512 et seq.).[1] An administrative law judge and PERB on review found that CDCR had violated the Dills Act and issued an order that CDCR cease and desist from "interfering with employee's right to have a union representative present prior to and during an invasive body search." CDCR filed a timely petition for review. We affirm the PERB decision but modify the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.X. has worked as a psychiatric technician at California state prisons since 2005. On August 1, 2007, A.X. signed an 894-A form, titled "Employee Identification Card Information." The form listed a number of rules, including that "[n]o employee or person shall take, carry, convey, or make accessible to any inmate within a Department facility

---

[1] The Dills Act states as one of its purposes "to promote the improvement of personnel management and employer-employee relations within the State of California by providing a uniform basis for recognizing the right of state employees to join organizations of their choosing and be represented by those organizations in their employment relations with the state." (Gov. Code, § 3512.) Subdivisions (a) and (b) of Government Code section 3519, provide in relevant part that: "It shall be unlawful for the state to do any of the following: [¶] (a) . . . to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter . . . ; [¶] (b) Deny to employee organizations rights guaranteed by this chapter."

All further undesignated statutory references are to the Government Code.

any intoxicant, opiate, narcotic, drug, or any other contraband articles, nor traffic with any inmate in any matter. Violation of this rule is a felony punishable by imprisonment." The form also contained the employee's acknowledgement that "I have read and understand the above rules and shall govern myself accordingly while employed at this facility. I understand that I am subject to search at any time, while on department grounds."

On June 26, 2015, the Investigative Services Unit (ISU) at the prison where A.X. worked received a tip from an inmate that, on July 1, 2015, A.X. was going to bring a powder narcotic into the prison. ISU forwarded the tip to OIA, which assigned two special agents to investigate.[2] The agents conducted a background check on A.X. and obtained her signed 894-A form.

The OIA agents arranged with an ISU officer at the prison to stop A.X. at the entrance gate when she arrived for work. On July 1, 2015, the agents met A.X. as she entered the prison grounds and introduced themselves as OIA agents who wanted to speak with her. They escorted A.X. to an ISU interview room. A.X. asked if she needed an attorney and whether she was going to be "walked off" the prison grounds.[3] An OIA agent responded that they just wanted to speak with her.

Once in the room, an OIA agent told A.X. that they were investigating an allegation that she was smuggling contraband into the prison and were going to search

---

[2] ISU is in charge of safety and security at the prison. ISU refers cases involving employee misconduct to OIA, which is the statewide investigative body of CDCR with authority to conduct criminal and administrative investigations.

[3] The term "walked off" refers to employees being escorted to the front gate and their identification card taken so they cannot reenter. An employee who signed an 894-A form and refuses to be searched can be held insubordinate and "walked off" the prison grounds.

3

her bags and her car. A.X. consented to the search, placing her bags on the table and providing the keys to her car.

An OIA agent told A.X. that two female officers would search her person. The female officers entered the room. One officer put on examination gloves and told A.X. to take off her clothes for a body search. A.X. stood up, pointed her finger to the ground, and demanded the presence of a union representative, supervisor, or peer support counselor. The female officer halted the search and informed the ISU officer outside the door of the interview room that A.X. had requested a union representative. The ISU officer relayed the request to an OIA agent.

The OIA agent told the ISU officer that A.X. was not entitled to a union representative because she was being searched, not interviewed. The ISU officer entered the interview room and conveyed this message to A.X. The OIA agent also entered the room and told A.X. she was not entitled to a union representative. A.X. was also informed that, because she had signed the 894-A form when she was employed at the prison, she had consented to being searched.

After being told she was not entitled to a union representative and had signed a form consenting to the search, A.X. said, "let's just get this over with." A.X. testified she began taking off her clothes, "only because they had already said no to my request, my demand. And I was in fear of disciplinary action. I didn't want to get walked off. I felt . . . like that would be an admission of guilt of some kind." A.X. testified she felt her job was in jeopardy and she "had no way out."

A female officer stopped A.X. from removing her clothes until the male agent left the room. The female officer completed the search without touching A.X., but required her to remove her clothes, bend over, spread her buttocks, and cough. The search lasted about four minutes. During the search A.X. was emotional and crying. The female officer informed an OIA agent that the results of the search were negative.

4

An OIA agent came in the room and spoke with A.X. A.X. demanded to know why she had been searched. The agent asked her who would want to hurt her. A.X. said that there was bickering among her coworkers about unfair workloads. The agent asked A.X. to think of something that had occurred recently involving inmates. A.X. named three or four inmates. A.X. was crying and the ISU officer offered to call someone to walk her to her work location.

On July 21, 2015, CAPT filed an unfair practice charge with PERB alleging that CDCR violated the Dills Act by denying A.X. union representation during the search. On September 25, 2015, PERB's Office of the General Counsel issued a complaint alleging CDCR violated the Dills Act, section 3519, subdivisions (a) and (b), by denying A.X. the right to union representation in the encounter with CDCR agents and adopting a strip search policy without meeting and conferring in good faith with CAPT.

On February 22 and 23, 2016, an administrative law judge (ALJ) conducted a formal hearing on the complaint. On June 28, 2016, the ALJ issued a proposed decision. As an initial matter, the ALJ noted CAPT's motion to amend the complaint to allege a change in CDCR policy to strip search employees without reasonable suspicion had been denied, based on the ALJ's finding that the alleged change was an isolated breach of policy. In the remainder of the decision, the ALJ found that CDCR violated the Dills Act, section 3519, subdivisions (a) and (b), by interfering with A.X.'s right to representation by CAPT during the unclothed body search on July 1, 2015, and concomitantly denying CAPT the right to represent its members.

On August 15, 2016, CDCR appealed the ALJ's decision to PERB, contending that the right to representation does not apply to "pure searches" without an investigatory interview, or to a criminal investigation, and that A.X. waived the right to representation when she agreed to continue the search after being reminded that she had consented to search as a condition of employment.

5

On November 27, 2018, PERB issued its decision. PERB found that CDCR violated the Dills Act, section 3519, subdivisions (a) and (b), by denying A.X.'s request for a CAPT representative when she was subjected to an invasive body search, which conduct also violated CAPT's right to represent her. PERB concluded that A.X. was entitled to union representation prior to and during an invasive body search, rejecting CDCR's "pure search" distinction. PERB stated "that the right to union representation attaches whenever an employer demands that an employee submit to an invasive body search, or subjects an employee to such search." PERB also rejected CDCR's argument that A.X. waived her right to representation by signing the 894-A form or by voluntarily agreeing to continue with the search after her request for representation was denied. PERB ordered CDCR to cease and desist from "[i]nterfering with employees' right to have a union representative present prior to and during an invasive body search." PERB further ordered CDCR to post a notice at all Sacramento state prison work locations to that effect.

## DISCUSSION

*Standard of Review*

PERB is empowered to adjudicate unfair labor practices claims under six employment relations statutes, including the Dills Act. (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 911 (*Boling*).) "It is settled that '[c]ourts generally defer to PERB's construction of labor law provisions within its jurisdiction. [Citations.]' " (*Ibid.*) " 'We follow PERB's interpretation unless it is clearly erroneous.' " (*Id.* at p. 912; *County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 922.) "[W]ithin PERB's area of expertise, the deferential standard . . . applies to [PERB's] legal determinations even if based on undisputed facts." (*Boling, supra*, at p. 913.) "Even so, courts retain final authority to ' "state the true meaning of the statute." ' [Citation.]" (*Id.* at p. 912.)

Under section 3509.5, "[t]he findings of [PERB] with respect to questions of fact, including ultimate facts, if supported by substantial evidence on the record considered as a whole, shall be conclusive."  (§ 3509.5, subd. (b).)  "Accordingly, in reviewing PERB's findings ' "we do not reweigh the evidence.  If there is a plausible basis for [PERB's] factual decisions, we are not concerned that contrary findings may seem to us equally reasonable, or even more so.  [Citations.]  We will uphold [PERB's] decision if it is supported by substantial evidence on the whole record." '  [Citations.]"  (*Boling, supra*, 5 Cal.5th at p. 912.)

*CDCR was acting as an employer in the search.*

CDCR contends that "PERB's decision is clearly erroneous because CDCR was <u>not</u> acting as an 'employer' for the purposes of the Dills Act.  Rather, CDCR was acting as a regulatory agency, performing a criminal law enforcement function."

PERB argues that CDCR cannot raise this argument on appeal because it pursued a different theory in the proceedings before the ALJ and PERB—i.e., that A.X. was not entitled to a union representative because it was a "pure search," not an interview.[4]  However, PERB acknowledges that CDCR did argue in its briefs that A.X. had no right to representation because CDCR was not acting as her employer when it searched her, but as a law enforcement agency.

We would reject PERB's forfeiture argument even if it were raised for the first time on appeal.  We agree with CDCR that "[t]he facts of this case are largely undisputed."  " '[A]n appellate court may allow an appellant to assert a new theory of the case on appeal where the facts were clearly put at issue at trial and are undisputed on

---

[4] CDCR does not pursue the "pure search" argument on appeal.  Nor does CDCR continue to contend that A.X. waived the right to representation by voluntarily consenting to the search.  CDCR still maintains the search was voluntary but now declares that this issue is "irrelevant to the question of CDCR's status as an employer under the Dills Act."

7

appeal.  [Citation.]' " (*Woodland Joint Unified School Dist. v. Commission on Professional Competence* (1992) 2 Cal.App.4th 1429, 1449; see *California Horse Racing Bd. v. Workers' Comp. Appeals Bd.* (2007) 153 Cal.App.4th 1169, 1173-1174.)

Moreover, PERB addressed this theory in rejecting CDCR's argument "that the right to a union representative does not arise in criminal investigations."  PERB observed that "in other public sector forums, the right to a union representative has been found in employer-initiated criminal investigations," citing *U.S. Department of Justice v. Federal Labor Relations Authority* (D.C. Cir. 2001) 266 F.3d 1228 (*Department of Justice*).

Turning to the merits, we disagree the Dills Act is inapplicable.  We find instructive a recent PERB decision, *State of California (Office of the Inspector General)* (2019) PERB Dec. No. 2660-S [44 PERC ¶ 48] (*Office of Inspector General*).  In *Office of Inspector General*, PERB rejected the contention of the State of California (Office of the Inspector General) (OIG) that it did not act as an employer during interviews of correctional officers conducted pursuant to a review of safety practices at a prison. (*Ibid.*)

PERB explained that the Dills Act recognizes " 'the right of state employees to join organizations of their own choosing and be represented by those organizations in their employment relations *with the state*.' " (*Office of Inspector General, supra*, PERB Dec. No. 2660-S at p. 14, citing § 3512.)  The Dills Act also uses other terms—" 'state employer' " or " 'employer' "—to refer to state agencies in the context of bargaining or meeting and conferring in good faith. (*Office of Inspector General, supra*, at p. 14, citing § 3513, subd. (j).)  But these terms are not synonymous with "state." (*Office of Inspector General, supra*, at p. 14, citing *State of California (Department of Forestry & Fire Protection, State Personnel Board)* (2014) PERB Dec. No. 2317a-S, p. 7 [39 PERC ¶ 80] (*State Personnel Board*).)  Section 3915, subdivisions (a) and (b), the statutory provisions allegedly violated in this case, "makes it unlawful for the 'state' to 'interfere with, restrain, or coerce employees because of their exercise of rights guaranteed' " to them

8

under the Dills Act and "to '[d]eny to employee organizations rights guaranteed to them' " under the act. (*Office of Inspector General, supra*, at p. 15.) "State" used in section 3519 is broader than "state employer" in section 3513, subdivision (j). (*Office of Inspector General, supra*, at p. 15, citing, inter alia, *State Personnel Board, supra*, PERB Dec. No. 2317a-S at p. 7.) PERB in *Office of Inspector General* interpreted the term "state" to mean "exactly what it says—the state itself." (*Office of Inspector General, supra*, at p. 17, citing *State Personnel Board, supra*, at p. 8, fn. 6.) Accordingly, CDCR and OIA come within the meaning of "state" under the Dills Act as used in section 3915, subdivisions (a) and (b).

However, "[a] state agency . . . is subject to liability under section 3519, subdivisions (a) and (b) if it is the appointing authority or when it acts as an employer." (*Office of Inspector General, supra*, PERB Dec. No. 2660-S at p. 17, citing *Cal Fire Local 2881 v. Public Employment Relations Bd.* (2018) 20 Cal.App.5th 813, 819 (*Cal Fire*); *State Personnel Board, supra*, PERB Dec. No. 2317a-S at p. 8.)[5] "[N]ot . . . every state agency is subject to 3519 liability at all times in any interaction with a state employee or employee organization." (*Office of Inspector General, supra*, at p. 17.) "[T]he liability of a non-appointing authority [is limited] to instances where an agency is acting as an employer." (*Ibid.*)

CDCR argues that "an agency acts in the capacity of an 'employer' for purposes of the Dills Act only when the agency is functioning as an *appointing* *authority* toward its *own* employees." This view if accepted would eliminate the distinction between a state agency as appointing authority and a non-appointing authority acting as an employer.

---

[5] "Appointing authority" or "appointing power" means a person or group having authority to make appointments to positions in the state civil service. (§ 18524; *Larson v. State Personnel Bd.* (1994) 28 Cal.App.4th 265, 274.)

But both are subject to the Dills Act.  (*Office of Inspector General, supra*, PERB Dec. No. 2660-S at p. 17.)[6]

Here, CDCR acted as an employer.  As discussed in testimony by OIA agents, OIA is the investigative department of CDCR.  OIA has dual authority to conduct criminal and administrative investigations of CDCR employees.  The primary difference between criminal and administrative investigations is that information from the former will be sent to a prosecutor and information from the latter will be sent to the hiring authority.  OIA may give advance notice to an employee of the criminal nature of an investigatory interview, but does not give advance notice of searches.

If an employee refuses to consent to a search, OIA would give the employee a direct order to comply with the search.  OIA would remind the employee that CDCR requires that an employee submit to search as a condition of employment and that the employee signed an 894-A form acknowledging that the employee is subject to search.  If the employee continues to refuse, the employee would be told that OIA would inform the

_____

[6] CDCR cites *California State Employees Association (Gonzalez-Coke et al.)* (2000) PERB Dec. No. 1411-S [25 PERC ¶ 32006] (*Gonzalez-Coke*) and *State Board of Personnel, supra*, PERB Dec. No. 2317a-S, as support for its contention that OIA was acting only as a regulatory, law enforcement agency.  In *Office of Inspector General*, PERB distinguished both decisions in a footnote:  "In *Gonzalez-Coke*, at pp. 17-18, the Board noted that PERB itself is not the 'state' for the purposes of section 3519, subdivision (d) when it adjudicates a case.  In [*State Personnel Board*] at p. 9, the Board found that when a non-appointing authority makes a broadly applicable quasi-legislative decision—in that case adopting regulations for disciplinary hearing procedures—it is also not the 'state employer' for the purposes of determining a bargaining obligation under the Dills Act."  (*Office of Inspector General, supra*, PERB Dec. No. 2660-S at p. 17, fn. 10; see also *Cal Fire, supra*, 20 Cal.App.5th at p. 819 [rejecting unfair labor practice charge, because, as in *Gonzalez-Coke*, "[t]he State Personnel Board is similarly acting in its adjudicatory function in modifying the rules of procedure that apply uniformly to it disciplinary hearings and appeals"].)  In the present case, as in *Office of Inspector General*, OIA "was not performing a quasi-judicial or quasi-legislative act and no one contends it had a duty to bargain."  (*Office of Inspector General, supra*, at p. 17, fn. 10.)

hiring authority of the employee's insubordination, which could result in adverse employment action.

As this testimony discloses, while OIA conducts criminal and administrative investigations, regarding searches which can lead to employee discipline, the process followed is administrative. The employee is informed that compliance with a search is compulsory as a condition of employment and confirmed by the 894-A form signed by the employee. A.X. was so informed. Refusal to consent to search leads to discipline. Had A.X. refused, she would have been subject to adverse employment action for insubordination and "walked off" the prison grounds, as she feared. A.X. was never told that the investigation was criminal in nature. Thus, OIA was acting as an employer enforcing a condition of employment in conducting a strip search of A.X.

In *Office of Inspector General*, PERB observed, "[a]n investigation or review of an employee's conduct at work . . . is the act of an employer. . . . The state may not evade responsibility for providing representation rights to an employee by outsourcing a review or investigation to a different arm of the state." (*Office of Inspector General, supra*, PERB Dec. No. 2660-S at p. 18.)

*A.X. was entitled to union representation in an investigation that could lead to discipline.*

CDCR contends that the PERB's decision that CDCR acted as an employer was based on findings that "(1) CDCR compelled A.X. to submit to the unclothed body search against her will; and (2) CDCR could have used the information acquired from the criminal investigation for disciplinary purposes. [Fn. omitted.]" CDCR claims these facts "are irrelevant to establishing an employment relationship."

We disagree. As we have just explained, CDCR through OIA was acting as an employer in compelling A.X. to comply with a search condition of employment where refusal could result in discipline for insubordination. Whether CDCR could have used information obtained during a criminal investigation for disciplinary purposes is an

11

equally key consideration. In *Office of Inspector General*, PERB cited *Department of Justice*, where this specific issue was before the federal court.[7] (*Office of Inspector General, supra*, PERB Dec. No. 2660-S at p. 20.) CDCR concedes that the facts of this case are similar to *Department of Justice*. In *Department of Justice*, the Office of the Inspector General (DOJ-OIG) denied a prison employee's request for union representation during an investigation into whether the employee had smuggled drugs into the prison. (*Department of Justice, supra*, 266 F.3d at p. 1229.) The Federal Service Labor-Management Relations Statute (FSLMRS) includes a provision that an agency must provide union representation to an employee during an investigation, if "a representative of the agency" conducts the examination, and the employee reasonably believes the examination may result in disciplinary action. (5 U.S.C. § 7114(a)(2)(B).) On appeal, the employer argued the employee was not entitled to representation because DOJ-OIG was conducting a criminal investigation, as opposed to an administrative investigation. The court, however, held that DOJ-OIG agents were required to provide the prison employee with union representation, observing that the "difference between administrative and criminal investigations in this respect is one of investigative strategy, not one of law. In either case, both OIG and agency management can benefit by mutual cooperation." (*Department of Justice, supra*, at p. 1231; *Office of Inspector General, supra*, at p. 21.)

CDCR attempts to distinguish *Department of Justice*, arguing that 5 United States Code section 7114(a)(2)(B) of the FSLMRS codifies the right to representation, while the right under the Dills Act has been developed through judicial and administrative

---

[7] PERB noted that it is guided but not bound by precedent interpreting federal collective bargaining statutes. (*Office of Inspector General, supra*, PERB Dec. No. 2660-S at p. 20, fn. 12, citing *Capistrano Unified School District* (2015) PERB Dec. No. 2440, pp. 28-29 [40 PERC ¶ 24] (*Capistrano*).)

decisions.  CDCR cites as support for this distinction, *Redwoods Community College Dist. v. Public Employment Relations Bd.* (1984) 159 Cal.App.3d 617 (*Redwoods*), which in fact highlights the importance of decisional law.  *Redwoods* observed that "[n]o court appears to have set a firm outer limit to this right of representation [during interviews], although the facts that the employee requested representation, that the interview was investigatory, and that the employee reasonably believed that the interview might result in disciplinary action against him or her (the discipline element), have been deemed significant."  (*Id.* at pp. 618-169, citing *NLRB v. Weingarten, Inc.* (1975) 420 U.S. 251, 256, 260-261 [43 L.Ed.2d 171] (*Weingarten*) [recognizing an employee's right to have a union representative present at an investigatory meeting that the employee reasonably believes could lead to discipline]; *Robinson v. State Personnel Bd.* (1979) 97 Cal.App.3d 994, 1000-1003 (*Robinson*) [*Weingarten* and its progeny are persuasive in interpreting the Meyers-Milias-Brown Act (§ 3500 et seq.) regarding public employee representation in cities and counties]; see also Evid. Code, § 160 [" 'Law' includes constitutional, statutory, and decisional law"].)

Indeed, the *Weingarten* decision cited by *Redwoods* is the seminal case on the representational rights of employees during investigations.  5 United States Code section 7114(a)(2)(B) of the FSLMRS provides to federal employees the rights afforded employees of private parties in *Weingarten*.  (Baldwin, *Weingarten and the Taylor Law— A Claimed Difference without Distinction* (1989) Hofstra Lab. & Emp. L.J. 123, 165 ["Section 7114(a)(2)(B) is a literal codification of *Weingarten* for federal employees . . ."].)

CDCR also quotes *NASA v. FLRA* (1999) 527 U.S. 229, 246 [144 L.Ed.2d. 258] (*NASA*), in which the United States Supreme Court noted that "Congress' specific endorsement of a government employee's right to union representation by incorporating it in the text of the FSLMRS gives that right a different foundation than if it were merely the product of an agency's attempt to elaborate on a more general provision in light of

13

broad statutory purposes." (*Id.* at p. 237.) To the extent CDCR suggests that California decisional law interpreting California statutes is less protective of representational rights than the FSLMRS, "both PERB and California courts recognize that, in several respects, the language of our public sector bargaining laws is 'considerably broader' than the federal law on which *Weingarten* rests." (*Office of Inspector General, supra*, PERB Dec. No. 2660-S at pp. 24-25, citing, inter alia, *Capistrano, supra*, PERB Dec. No. 2440 at p. 13.)

Further, CDCR omits that *NASA* held that an employee was entitled to union representation in an investigatory interview conducted by NASA's Office of Inspector General (NASA-OIG). (*NASA, supra*, 527 U.S. at p. 246; *Office of Inspector General, supra*, PERB Dec. No. 2660-S at p. 21.) In *Office of Inspector General*, PERB noted that the court in *Department of Justice* relied on *NASA*. (*Office of Inspector General, supra*, at p. 21.) As described by PERB, in *NASA* the Supreme Court found that "the overlap between management activities and the NASA-OIG's duties would often generate cooperation between agency managers and the NASA-OIG. [Citation.] The Court also observed that 'the interest in fair treatment for employees under investigation is equally strong whether they are being questioned by employees in NASA's OIG or by other representatives of the agency.' " (*Office of Inspector General, supra*, at pp. 21-22, citing *NASA, supra*, at pp. 244-245.)

Additionally, in *State of California (Department of Forestry)* (1988) PERB Dec. No. 690-S [12 PERC ¶ 19122] (*Forestry*), which some 30 years ago adopted *Weingarten* as guiding interpretation of section 3519, subdivisions (a) and (b) of the Dills Act, PERB recognized the overlap between a criminal and disciplinary investigation with regard to the right to representation. (*Forestry, supra*, at pp. 7-9; *Rio Hondo Community College District* (1982) PERB Dec. No. 260, p. 17 [7 PERC ¶ 14010].) In *Forestry*, PERB noted that the Supreme Court in *Weingarten* "upheld the right of an employee to have a union representative present at an investigatory interview with the employer which the

14

employee reasonably believes may result in discipline." (*Forestry, supra*, at p. 7.) Albeit, "[t]he employer's obligation to honor this representational right must be triggered by an employee request for union representation." (*Forestry, supra*, at p. 8, citing *Weingarten, supra,* 420 U.S. at pp. 256-257.)

In *Forestry*, an employer conducted an investigatory interview of a state employee to determine if the employer would pursue criminal charges for personal use of state postage. (*Forestry, supra*, PERB Dec. No. 690-S at p. 3.) PERB stated that a criminal investigation of an employee "is the type of investigatory interview contemplated by *Weingarten*." (*Id.* at pp. 8-9.) The employee was given Miranda warnings at the start of the interview and the first series of questions informed her that the purpose of the investigation concerned the illegal use of state postage. (*Ibid*.) PERB reasoned that if an employee "was put on notice . . . that she was being investigated regarding a criminal matter, it follows she was aware that the investigation might lead to disciplinary action." (*Ibid.*) The only question left to be answered under *Weingarten* and the Dills Act is whether the employee requested union representation. (*Forestry, supra*, at pp 8-9.) If so, she was entitled to a union representative at the investigatory interview. (*Ibid.*)

We note that in *Weingarten* the court explained the value to an employee (and an employer) of the assistance of union representative in an investigatory encounter. "A single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors. A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview. Certainly his presence need not transform the interview into an adversary contest." (*Weingarten, supra*, 420 U.S. at pp. 262-263.) The California Supreme Court has adopted this reasoning. (*Civil Service Assn. v. City and County of San Francisco* (1978) 22 Cal.3d 552, 567; see also *Robinson, supra*, 97 Cal.App.3d at p. 1000.) In this

15

instance, a union representative could have urged a pre-search inquiry that the OIA agent in fact engaged in post-search, i.e., whether there was an inmate who might have been motivated to make a false report against A.X., and thereby avoid proceeding with a search that the ALJ found to be a breach of CDCR policy.

Under *Department of Justice*, *Weingarten*, *Forestry* and the other authority discussed above, A.X. was entitled to the union representation she requested even though CDCR maintains it was conducting a criminal investigation. The search was clearly investigatory. CDCR does not dispute that A.X. reasonably believed that the search of bags, car and person could lead to discipline. She immediately questioned whether she was going to be "walked off" the prison grounds, a step that accompanies discipline. She testified to her fear that her job was in jeopardy. Unlike the employee in *Forestry*, A.X. was not informed of the criminal nature of the investigation. OIA's use of A.X.'s signed 894-A form to compel compliance with search definitively confirmed a reasonable belief on her part that the investigation could lead discipline.

Lacking any PERB or court decisions supporting its position that a criminal investigation is not subject to the Dills Act, CDCR relies on a trio of ALJ decisions that were not appealed and therefore finalized by PERB but designated as non-precedential and binding only on the parties to the case. (*State of California (Department of Developmental Services)* (2018) No. SA-CE-2111-S [43 PERC ¶ 25], finalized in PERB No. HO-U-1597-S [43 PERC ¶ 37]; *State of California (California Highway Patrol)* (2016) No. SA-CE-2050-S [41 PERC ¶ 90], finalized in PERB No. HO-U-1334-S [41 PERC ¶ 103]; *State of California (Department of Developmental Services)* (2018) No. SA-CE-2112-S [42 PERC ¶ 152], finalized in PERB No. HO-U-1592-S [43 PERC ¶ 9].) CDCR argues that these ALJ decisions have persuasive value.[8]

---

[8] CDCR cites *San Diego Community College District* (2001) PERB Dec. No. 1467, pp. 2-3 [26 PERC ¶ 33014], as authority that a non-precedential ALJ decision is

We decline to consider these ALJ decisions. In *California Teachers Assn. v. Public Employment Relations Bd.* (2009) 169 Cal.App.4th 1076, the court rejected a request for judicial notice of "two decisions issued by ALJ's in cases brought under PERB's jurisdiction . . . ." (*Id.* at p. 1079, fn. 2.) The court said, "we note that California Code of Regulations, title 8, section 32320, subdivision (c) provides only that '[a]ll decisions and orders *issued by the Board itself* are precedential and may be cited in any matter pending before a Board agent or the Board itself.' (Italics added.) It does not include ALJ decisions as among those with precedential value, and [California Teachers Association] has not otherwise explained how those ALJ decisions might be entitled to our consideration in evaluating the Board's decision herein." (*Ibid.*)

CDCR has not requested judicial notice of the ALJ decisions and its contention that they are of persuasive value is questionable, in light of PERB's decision in *Forestry* that a criminal investigatory interview was subject to the Dills Act and PERB's decision in *Office of Inspector General* citing with approval the federal court's opinion in *Department of Justice*, which also held that an employee has representational rights in a criminal investigation. In fact, these PERB decisions stand as contravening case law to the ALJ decisions on which CDCR relies, which CDCR acknowledges eliminates any persuasive value they might have.

*PERB's order is an overbroad restraint on criminal investigations.*

Lastly CDCR lays out a parade of "absurd results" if union employees may request union representation in a criminal investigatory search: giving state employees an absolute right to union representation in encounters with law enforcement agencies; giving city and county employees the same rights under the Meyers-Milias-Brown Act

---

persuasive authority in the absence of contravening case law. *San Diego* does not so hold. PERB noted in the fact section of that decision that a PERB agent found an ALJ decision persuasive in dismissing an unfair labor practice charge. (*Ibid.*) PERB, however, reviewed the dismissal without reference to the ALJ decision.

(§ 3500 et seq.); delaying or impeding criminal investigations; giving state employees an unfair advantage not afforded the general public in criminal investigations; and undermining the uniformity of criminal investigation procedures by subjecting them to collective bargaining.

CDCR does not take into account that where a non-appointing agency is conducting a criminal investigation, the Dills Act only applies where the agency is acting as an employer. Only where, as in *Forestry*, the employer itself conducts the criminal investigation will an employee have right to representation on request. In this instance, OIA, a non-appointing authority, was acting as an employer, among other things, in failing to inform A.X. of the criminal nature of the investigation and using the 894-A form to compel her to submit to a strip search.

We conclude, however, that the order is overbroad insofar as it does not reflect the principles limiting representational rights under the Dills Act. Under section 3520, subdivision (c), we have jurisdiction to modify PERB's order.

Accordingly, we modify PERB's decision to limit an employee's right to have a union representative present prior to and during an invasive body search to circumstances where CDCR and its representatives constitute the appointing authority or are acting as an employer and the employee reasonably fears discipline.[9]

---

[9] "In California, a public employee is entitled to representational rights not only when an employee reasonably fears discipline, but also in other 'highly unusual' circumstances that are not necessarily disciplinary." (*Office of Inspector General, supra*, PERB Dec. No. 2660-S at p. 27, citing *Capistrano, supra*, PERB Dec. No. 2440 at p. 13; *Redwoods, supra*, 159 Cal.App.3d at p. 625.) Contrary to PERB's contention on appeal, PERB did not make a finding that the search constituted "highly unusual" circumstances. We limit our modified order to the issues raised in this case.

## DISPOSITION

PERB Decision No. 2598-S is modified as stated above.  The decision is otherwise affirmed.  Respondent shall recover its costs.

/s/
RAYE, P.J.

We concur:


/s/
HULL, J.


/s/
RENNER, J.